## EAGLE & PHENIX MILLS *v.* JOHNSON.

1. In a suit brought by an employee against the master, to recover damages sustained because of the fall of an elevator in which the plaintiff was being conveyed from one floor of a building to another, the plaintiff being rightfully upon the elevator, the petition was not open to attack by a general demurrer, it being alleged that the fall of the elevator was caused by defects in the mechanism of the elevator, rendering it unsafe to operate the same, and that said defects were known to the defendant or had existed for such a period of time as to charge it with notice.

2. But it was error to overrule a special demurrer directed to a failure in the petition to allege that such defects were not latent or that they might have been discovered in the exercise of due diligence in the matter of inspection by the master.

Submitted February 11,—Decided July 15, 1908.

Action for damages. Before Judge Little. Muscogee superior court. January 21, 1907.

*Garrard & Garrard* and *W. C. Neill,* for plaintiff in error.

*T. T. Miller* and *S. B. Hatcher,* contra.

BECK, J. Johnson sued the Eagle & Phenix Mills for damages, on account of personal injuries. The plaintiff's petition alleges

substantially the following facts: He was in the employment of the defendant, his duties being to supply the weavers in the first floor room of mill No. 3 with filling and to distribute it among them. The filling was spun on the fourth floor of the mill, and was conveyed to the first floor, where plaintiff worked, by means of an elevator, and when there was delay in sending down the filling, it was the duty of the plaintiff to go after it. On this occasion, there being urgent need for filling, plaintiff entered the elevator, to be carried to the fourth floor, and when it had ascended through the second floor, without warning it fell back to the ground floor, and thereby injured plaintiff. The injuries did not result from his fault or negligence, but from the negligence of the defendant in operating a defective elevator, the mechanism of which was worn and faulty. The worm on the shafting, which runs the drum upon which the rope winds, was defective, in that the threads on the worm were so badly worn away that the cogs working in the worm would not hold and sustain the elevator, and from the worn and defective worm and cogs in the gearing of the elevator it fell. These defects were known to defendant, or had existed for such a period of time as to charge it with notice, but were unknown to the plaintiff, it not being his duty to operate the elevator or to inspect its mechanism. The defendant demurred generally and specially to the petition, on several grounds; and to the judgment overruling its demurrers it excepted.

1. The court did not err in overruling the general demurrer to the plaintiff's petition. While it is not stated with directness and precision by the petitioner that the discharge of his duties in the mill required him to use the elevator in passing from one floor to another, fairly construing the petition, it means that when he took passage upon the elevator, at the time of receiving the injuries complained of, it was necessary for him to do so in order to properly discharge his duties to his master in the situation in which he was then employed. Had a special demurrer been offered to those paragraphs of the petition setting forth why, by what right, in what capacity, and whether necessarily in the discharge of his duties the plaintiff was upon the elevator at the time the injuries were inflicted, it is probable that the court below would have stricken the paragraphs referred to, had not appropriate amendments been submitted setting forth with greater precision

and certainty the circumstances under which the employee of the defendant, now suing, was upon the elevator, as well as facts showing his right and duty to be there. But construing the allegations as they stand, they mean that he was upon the elevator rightfully in the discharge of his duty. That being the case, if, without fault or negligence upon his part, he was injured by a fall of the elevator, the defendant corporation would be liable if it had failed to come up to the legal standard of its duty in the matter of furnishing a safe place in which to work or to furnish a safe appliance which the employee was rightfully using in meeting the requirements of the service in which he was engaged. The petition charges: "Defendant was negligent in having in operation and in operating a defective and unsafe elevator, the same being defective, in that the mechanism thereof was worn out and faulty and defective, and in that said elevator was not safe. The worm on the shafting which runs the drum upon which the rope winds was deficient and defective, in that the threads on the worm were so badly worn away until the cogs working in the worm would not hold and sustain the elevator, and from said worn and defective worm and cogs in the gearing of said elevator it fell as aforesaid. That said defect in the worm, cogs, and gearing of said elevator, rendering it defective and unsafe and dangerous, was known to the defendant or had existed for such a long period of time as to have charged it with notice; but was wholly unknown to the plaintiff, it not being his duty to operate said elevator or to inspect its gearing or mechanism." If these allegations and others in the petition showing how the plaintiff was hurt in the fall of the elevator are true, the plaintiff was injured in consequence of an unsafe appliance or instrumentality, furnished and operated by the master and which had become unsafe and dangerous through the negligence of the master, unless the defect was latent—was such that it could not have been discovered by the exercise of due care and diligence in the matter of inspecting the particular machinery under question. In such a case liability on the part of the master arises upon injury to the servant through the use of an appliance which has become dangerously defective, unless the defect is of such an open, patent, and obvious character that it would have been observed by the servant himself in the exercise of ordinary care. "The essential facts which must be established

to entitle an employee to recover damages from his employer for a personal injury sustained by him by the use of defective machinery in his elevator are that his employer either knew or ought to have known of the defect, and that the employee did not discover and that it was not his duty to discover the defect." 10 Am. & Eng. Enc. Law (2d ed.), 955. "In an action brought to recover damages for personal injuries sustained by the falling of an elevator, the plaintiff must prove not only that the elevator was without repair, but also that the defendant, his employer, negligently suffered it to be so." Moran v. Racine Wagon Co., 74 Hun (N. Y.), 454 (26 N. Y. Supp. 852). See also Bier v. Standard Manufacturing Co., 130 Pa. St. 446 (18 Atl. 637). "Considering the very dangerous character of the machine under consideration (an elevator) and the dreadful consequences which usually result from an accident, it is obvious that the rule of reasonable care already considered, which is satisfied with nothing less than a measure of care proportionate to the risk or the danger to be avoided, puts upon the master an exact and continuing duty of inspection. The fact that an elevator used by an employer in the conduct of his business is inspected at stated intervals by city officers, and by the agent of an indemnity company, does not release the employer from his duty of making frequent examinations and applying frequent tests to the elevator to see that it is in working order and in a safe condition. If in any case an accident happens from the fall of an elevator which could have been avoided if a reasonable inspection of the elevator had been made, the master will be liable." 4 Thompson on Law of Negligence, §3902.

It being among the absolute, non-delegable duties of the master to furnish reasonably safe appliances and a safe place in which to work, it can not be said that the servant assumes the risks of dangers which are the result of appliances and instrumentalities which have become dangerously defective through the negligence of the master or his servants to whom he has entrusted the duties of keeping such instrumentalities in a safe condition or of discovering defects in them which might be discovered by reasonable diligence in the matter of inspection. *Southern States Portland Cement Co.* v. *Helms, 2 Ga. App.* 308 (58 S. E. 524).

2. Without taking up the various grounds in detail, what we have said now disposes of all the several grounds of demurrer ex-

cept that which specially attacks the petition because it "does not state what the defects in said elevator consisted of, so as to show whether said defects were latent or patent, and does not show affirmatively that the alleged defects could have been discovered by defendant, nor that said defendant failed to exercise proper inspection of said elevator, nor that a proper inspection of said elevator would have disclosed such defects." While the duty of inspection is imposed by law upon the master, he could not be held liable in this case if the defect which caused the fall of the elevator was latent and of such a nature that it could not have been discovered by proper inspection; and in order to render complete the cause of action as set forth in the petition, it should have been made to appear that the defect was such as was discoverable upon inspection. See the case of *Georgia Railroad & Banking Co.* v. *Nelms,* 83 *Ga.* 70 (9 S. E. 1049, 20 Am. St. R. 308), and the authorities there cited.

*Judgment reversed. All the Justices concur.*